Morning, Your Honors. May it please the Court. I'm Andrew Rubin. I'm representing Mr. Holland, the appellant in this case. If I might, I think first get something we agree on out of the way, counsel and I, and that is under what would, I guess, be called Ameline 3, or Ameline 3, which was decided about two weeks ago. We both think, and we assume you will think, that the case needs to go back for a limited remand to the district court judge for her to tell us what she would have done had she known that the guidelines are guidelines and that they're not mandatory. So, although, on our side of the table, we have some questions about Ameline. It's clearly the law, and I don't see there's going to be Ameline 4 coming out of Holland. So, you know, there are times at which you just move on. So let me move on a little bit. I've looked through the relevant parts of the record, and I don't know whether the government and our side just have a disagreement about semantics or exactly what's going on, but the government seems to be taking the position that with regard to the questioning of Mr. Holland and the questions of him regarding did certain people commit perjury, certain witnesses commit perjury, did certain witnesses lie, and those were specific questions that were asked. And it certainly appears that under this circuit's rulings, those questions are improper. And I think that they've been improper for several years. I think the error is plain. The question is, was there some door opened by either the opening argument that was made by trial counsel, which I've looked at, and he doesn't talk anything about witnesses lying, and I think it's important to look at the fact that there's a real difference between having witnesses for the government testify one way and witnesses, including the defendant, testify a different way, versus saying to the defendant, did the people who testified against you lie? Did they commit perjury? It's not the same thing. And in this case, the case was contested. There's a line somewhere in the government brief on page 11 where it says, the evidence was uncontroverted. Well, it seems to me the evidence was controverted all over the place. Isn't that why we're here on this appeal, is that the evidence was controverted, about 60 percent of the, a little bit more than 60 percent of the charges he was found guilty on, and 40 percent or 37 percent he wasn't? And the evidence appears to be, with the exception of the counts that there were no live witnesses on, the other ones, we can't tell why there were convictions. But what's your real beef here? You know, if you just, if you just, where was, did the prosecutor say something that really affected, or we would have to conclude that it had a sufficient probability of affecting the jury's judgment, that we would have to call it, I gather it's a plain error standard? Yeah. It's a plain error standard. It seems to us the error is plain. This Court's Just describe what it is exactly. Okay. In three different places on the cross-examination of Mr. Holland, there are questions, and it's in the governmental supplemental excerpt of record at pages 189, 187, 186, although that one was objected to and sustained, and, I'm sorry, 189, 194, 217. And the questions are, the government lawyer basically said, after going through, there were a whole bunch of witnesses who testified, they were 18, they were 21, and then he said, and they all perjured themselves, correct? And the appellant said, absolutely. You're not perjuring yourself? No, sir. So they all lied. Yes, sir. Now, the later on. So, exactly, what should the district court have done there? Well, there was no objection there. No. Okay. There was an objection later on, although based on a repetitive questioning. And then there's a third instance also asking about it. Well, the district court could have admonished the prosecutor. The district court could have, sua sponte, given instruction to the jury saying, in this, I don't think they would have said, in this district the law is. But, in effect, saying, it's not up to the defendant to make comments upon whether the prosecution witnesses are lying or not. And. Yeah, but who's trying the case? Not the district judge, it's the defense attorney. I understand that. As a district judge, I, you know, I do not, I think that they know sufficient about their case that I'm not going to take over their case. It seems to me the thrust of what you're arguing is that defense counsel should say nothing, no matter how bad, you know, no matter how bad he thinks it might be, or should say nothing if he thinks there's a problem, and then just wait on appeal, and then say, oh, you know, I should have objected, but I didn't, and it's plainly error. The district court should have done something, and it didn't. And that's not the way we want the system to work. No. We want to sit back and let error occur, and then argue about it two years later. No, absolutely we don't. And so, it seems to me that what the court needs to do, and I think the court's been very clear, we've cited, I don't know, four or five cases in which there were no objections, I think there's one in which there were objections, in which there were no objections to this line of questioning, this court's found plain error, and this court's reversed. Okay? But aren't those cases where there's a very, very thin case to begin with? Well, they're cases in which all the counts ended up in conviction. There were smaller cases, fewer counts. There was one that was a retrial. But, you know, one of the problems with retrials, and I've tried several, is that the evidence doesn't always come in exactly the same as it did the first time. And so the first case may very well be close with the hung jury, and the second case isn't. This case you have a lot of witnesses who testified that he was guilty. And a lot of witnesses who testified he was guilty, and, gee, the jury came back and said, gee, we don't believe you, or they said, in effect, that because they said there's no conviction. We're not going to convict on those counts. So when you've got a circumstance in which basically the evidence, with the exception of the counts where there are no live witnesses, the evidence is virtually identical on all counts, and the jury finds some guilty and some not guilty. But he was convicted of 27 counts of filing false tax returns. What were the acquittals? How many of them? Well, what were the nature of the crimes? All the same. Were they conspiracies? No, all the same. There were different instances? Right. There were 21 different people who supposedly were, I don't know whether you want to call them victims or whether the government's the victim, but there are 21 different people who claimed that Mr. Holland had prepared their tax returns and had done this Schedule C finagling. And 16 counts acquittal, 27 counts conviction. On several of the counts, and I don't remember exactly how many, there were no live witnesses. But there were counts with live witnesses and acquittals. So it's a credibility contest. And I want to, and I've been struggling with something that I want to present to the court, and maybe I'll actually make it clear this time, because I've run through it in my head, and I understand it. But when I say it out loud, I'm not sure I can persuade anybody else. But let me give it a try. And it's the best I can do. When, and this is why I think that there's prejudice in this case. When the defendant, the appellant in this case, is asked to comment on the truthfulness of prosecution witnesses, is somebody lying? Is somebody perjuring himself? There's really, I don't want to call it a burden shifting, because that has a specific meaning. But to me, it changes how the testimony is looked at. The jury can easily look at a complaining witness's testimony to decide whether they believe it beyond a reasonable doubt. They don't have to believe it's perjury, they don't have to believe it's lying, but they have to believe the facts beyond a reasonable doubt. The defendant can testify, the jury can still not believe the prosecution witness beyond a reasonable doubt. Once the defendant is asked to comment, are those people lying? The implication is that the only way you can get an acquittal on whatever count it is, is if those people are lying. And the defendant is put in the position of making a comment about something about which he has no real idea. He knows that the testimony isn't correct, but he doesn't know whether it's lying or perjury. That involves all sorts of other secondary factors having to do with mindset. And once the defendant is asked that, his credibility is put to a test that's different from his credibility when he's testifying about what actually happened. He, the jury now, not only is in a position of, they no longer have to worry about whether they believe him or not on the underlying facts, as long as they don't believe the other witnesses. But they now almost have to believe the defendant as well as disbelieve in the other witnesses. And it's a tougher standard. And I don't know whether I've made that clear. It doesn't sound any better to me than it did this morning, actually. I mean, that's the foundation, I believe, for our case law, saying that this is an improper line of questioning. Right. And most, I suppose, it evolved in cases when an objection was made. Right. And so it seems, I mean, it just seems to us, when the question was asked earlier to me, which I'm not sidestepping, I just wanted to say that first, is what should the district court have done? And I think when we look at the whole system and how the system should work, this is a very important question. We can't ask those questions. They are improper and they present a real danger of a conviction that's based not on the evidence. That's what this Court has been saying. And the question is, until the prosecutors get it. Well, according to the – I'm sorry to interrupt, but according to the government – did you try the case? I did not. No. Well, according to the – have you read the transcript? I've – Because according to the government, the defense counsel himself brought – asked the defendant. You're saying your position is that they all lied. The problem is that I've certainly read that part of the transcript. I've read the defendant's testimony. It's never asked anywhere by the defense lawyer, ever. The only question the defense lawyer asked about a prosecutor lying was there's a question about whether one of the witnesses knew the defendant's girlfriend, Ms. Fribley, I think her name is. This guy named Riccardi. And there's one question that says something like, did Mr. Riccardi know Ms. Fribley? Yes, he did. He was hitting on her at times. He was trying to go out with her. That's the only time. All the other citations for the record, there are no questions by the defense attorney at all. If there were, I won't tell you I wouldn't be up here. I'd probably have flown up here from Los Angeles anyway. I'd be arguing something else. He didn't ask Holland whether a witness's testimony was truthful? No. All he did was say, Mr. So-and-so testified this way. Did you prepare the tax returns? Mr. So-and-so testified you prepared the tax returns. Did you prepare them? No, I didn't. And that's not the same thing as saying was he lying. He could have been mistaken. He could have believed it because there were these instances in which there was a third party intermediary who actually ferried the returns supposedly back and forth between the taxpayer and Mr. Holland. There's a serious difference between saying Mr. X testified this happened. What do you say? It didn't happen. Versus Mr. X testified this way. Is he lying and committing perjury? It's different. And if we're going to have any case in which there's a credibility contest, any case in which it's a, in this case, mostly a he said, he said, we're going to have a circumstance in which, of course, the defendant's testimony is not going to be the same and it's going to contradict other witnesses. But that's different from saying did this person lie? And that wasn't asked by defense counsel. So we think that under this court's jurisprudence, the error is plain. And then the real question is, you know, what do we do about that? And our position is that based on the fact that the verdicts are so mixed, that that's at least as good an indicator of a close case as where a case in which there was an earlier hung jury that wasn't even in the same case. Well, counsel, wouldn't you admit that if the verdicts had not been mixed, they'd all been guilty, you would have said, well, look, it's so suede that they didn't even pay attention. Oh, absolutely. Unbelievable. Look at what happened in this case. I'd absolutely be saying that. Okay. And by the way, if there were one conviction, I'd be saying, look at how they compromised. You know, we should throw out that compromise. I have one other question. You're accusing the defense counsel in the district court of ineffective assistance. Am I correct? Yes. But I want to point out, we only really need to talk about that if this court says, you know, there was error, but under a plain error standard, it's not going to be reversible, but under an IAC standard, it would be. Because it seems to me that it's really part and parcel of the same argument. And I'm not pushing the IAC here, but I mean, it is before you, and I think that it certainly is an argument that can be made that, of course, and in fact, this court even said earlier in the argument, shouldn't there have been objections? I don't know what the, and I admit this, I do not know what the rule is in this circuit. The circuit I come from, if you accuse somebody of ineffective assistance of counsel, you waive the attorney-client privilege. And on the retrial, the first witness is the old lawyer. What's the rule here? Actually, I don't know what the rule in this circuit is on that. Well, I don't know. It would have a tremendous impact on your argument, I think, if your lawyer is the first witness against you. Well, unless the lawyer got up and said, well, gee, he's innocent. That's possible. Very possible. Lawyers will actually say that. I don't think that there's anything else that's not covered by the briefs. And I see I have about four minutes left that I'd like to reserve, unless there are other questions. I'll be happy to stumble my way through trying to answer them. But if not, let me reserve four minutes. Thank you. Thank you. May it please the Court. My name is Jay Weil. I'm an assistant U.S. attorney here in San Francisco. And I was the prosecutor below, so I'm very familiar with the record here. The question I asked occurred, which I now concede were improper questions. There's no question about it. But it occurred after, and I'll just use the convicted counts, 14 government witnesses testified. Each testified that the defendant had prepared their returns. Twenty-seven tax returns were admitted into evidence. Twenty-one of them contained the defendant's home address and or P.O. box on the tax returns. The jury also heard of there were two of the 14 taxpayers who agreed with the IRS to have conversations with the defendant recorded. In those conversations, which are part of the exerted record, you hear the defendant acknowledging, well, first he makes sure he tells them, please do not tell the IRS I prepared your returns. Tell them a Troy, use the name Troy Lewis, prepared your returns. And he was well aware that the returns had been filed with his own home and or P.O. box on them. He was also aware that refund checks had come in. He also acknowledged having gone with one of the witnesses to the bank to cash the refund check. By the way, his scam was that he would do all of this. He represented to some, but not all, that he was a former CPA, which was a lie. He represented to some, but not all, that he had ex-IRS employees working for him. And he'd do all of this for 50 percent of the refund. The defendant then took the stand. He was, in a sense, the only witness, the only defense witness. His testimony, he went through his lawyer, each of the 18 witnesses who testified. And in some instances, his lawyer asked him, now, Mr. Jones said in the government's case that he prepared, you prepared his return. Did you? I did not prepare his return. He testified. You'd be willing to correct your statement in the brief over the course of defendant's testimony, defense counsel asked defendant at least 20 times whether one or more of the government's witnesses had lied. I do correct that, Your Honor. I meant by implication. But every, you're right. I apologize for that. We pursued those in the record. Yeah, they're not there. They are not. But what occurred, it was obvious what. He asked that, he asked the defendant, Mr. Jones prepared, says he testified he prepared your return. Did you? I did not. He testified that he had never prepared any return other than his own. He had no idea why his address was on 21 of the 27 tax returns for which we got a conviction. And he had no idea. Now, this argument you're making, I assume, goes not to invitation but to prejudice. Correct, Your Honor. There was no substantial prejudice as a result of the question. Finally, I then in cross-examination. Do you know they were improper at the time? Excuse me? Did you know they were improper at the time? No, I did not, Your Honor. And I'm going to read to you. At the time I asked him, I will read to you very quickly. It's at 189 of the transcript of the Exeter record, what occurred. I handed the witness. We had a summary exhibit, a schedule listing that had been prepared in our summary witness, Exhibit 71. It's also in the Exeter record at pages 1 and 2. I handed Mr. Holland the summary schedule that listed 43 tax returns, 21 taxpayers, numbers, dates, amounts, claims. And I said, all right, let me hand you this. Now, we can go through all 43 of them, but let me ask you just this. As I understand it, you haven't prepared one return that's listed on this schedule. Answer, no, sir. I don't prepare returns except my own. So we can go through the witnesses one by one, but let me ask you this. So therefore, it's your testimony that all 18 witnesses, that's exact, all perjured themselves. Answer, absolutely. You're not lying, are you? No, sir. So they all lied, yes, sir. I asked the question at the time. It was an attempt to kind of expedite the cross-examination. In retrospect, hindsight is always great. I should have gone through that schedule and gone through all 43 returns and just kind of repeated what he had done on direct examination. I chose not to. There was no objection to it. Then later on, at the very end of cross-examination, I went back to the schedule and I said to him, this is at page 216 of the Exeter record, now all 18 people that we called all said they had conversations with you about preparing your returns. Did you have those conversations? Never. No. Never. All right. They also testified that they had some financial transactions with you about it. Did you have those conversations? No. No, I did not. Then I said, I then asked the hypothetical. So this is at page 217. So they would be lying if they made those statements. Oh, yes. Yes, sir. And they'd also be lying if they said that you charged them 50 percent. Yes, sir. That's the extent of it. There was no objection, and it's my case. I now recognize those questions were in error, they were improper questions, but given the plain error standard of review, there was not substantial prejudice. This case was not a close case, despite my colleague's, my opponent's contention. It was the evidence of guilt was overwhelming, and there was no really explanation to why especially his name and his address would be on 21 of the returns. Let me just say finally, on the amyline. Were those that were on the 21 returns where his name was on, were those all convictions? Yes. And I'm only using of the 27, there were 27 convictions. Of those 27, 21 had his name, his address and or PO box on them. Finally, to my, on the amyline, I agree that they're under your, the court's in-bank decision amyline, there must be a remand back to the district judge, a  And I think that her decision would be different if she now knew that the, if she then knew that the, that the guidelines were advisory. And with respect, finally, the last issue on the restitution issue. The court ordered, we agree that the amount of the restitution should be, there should be a limited remand back to reduce it by the penalties. They were not properly. It only could be tax and interest. And there's also an argument that it all should, the whole restitution issue should be remanded because the district judge must somehow explain at the hearing that the financial resources of the defendant and the financial needs and the ability to pay the restitution. That is not the law. The law in the Ninth Circuit is that there, and I cite, this came up in his reply brief, the U.S. Canisario case, which is at 817 Fed 2nd 809, in which this court has held that the court is not required to make findings of fact with respect to the ability to pay or even discuss the factors on the record. All that need be in the record is there's something to show that the court had at his or her disposal information bearing on ability to pay. In this case, the pre-sentence report, I mean, it's not part of the Exeter record, but I read it. And she discusses the pre-sentence report at the sentencing, has a whole discussion on the financial ability to pay. And in the transcript, the judge elects not to impose a fine because she says that he wouldn't be able to pay both the fine and restitution. So I think we're, I don't think there needs to be a remand on that issue. There's something, though, I think about working out a payment schedule for the restitution, and that usually takes into account how much you can pay at a given time. Well, in the court's judgment, there's an order about electing to work with the probation office about a payment schedule. Right. What about, now, the government, I believe, has recovered from the taxpayers themselves. We did, and we reduced that by the recovery. So the order of restitution was a net figure. And that's still the case? I mean, I wasn't sure on the record. That I'm aware of, at least. I mean, yes, it was a net figure. According to the declaration of the agent that we submitted, there was no objection to the amounts. There was simply an objection that it shouldn't be considered at all. Unless the Court has any questions, I'm done. Thank you. Okay. I think that with regard to the main issues other than the restitution, unless the Court has questions of me, I just want to talk very briefly about the restitution. It wasn't clear to me from what I reviewed that it was a net figure, and that there were recoveries that were made from Baker and Fribley, and there may be more people. I mean, one of the things that's going on clearly, at least I assume it is, is that the government would be trying to recover the money from these other people who had taken improper tax deductions. And so, sort of uncomfortably, the amount of restitution is a moving figure, or it's likely to be a moving figure moving downward. And, you know, our feeling is that there should be a remand, and the question becomes, if the Court agrees that there should be a remand in terms of the restitution, whether, as long as the Court below is doing that, there could be an exception to Ameline. And I didn't mention that before, because I was actually running out of time, but if the case goes back, and I'm not saying it will, I'm saying you could, send it back for a restitution review. At the same time, the Court could do, could make the statement, the lawyers will be there, there should be input from the lawyers anyway, I believe, under Crosby. Do I have the name of the case right? And Ameline. So, the Court could actually take a look at this at the same time. If there's any, if there's anything else that I didn't help you with, or confuse you with earlier, I would be happy to try to do it again. I don't think so. Thank you. Thank you very much. The matter just argued is submitted for decision.
judges: Schroeder, Canby, Duffy